STATE OF NORTH CAROLINA v. CHARLES TAYLOR

No. 7628SC863

(Filed 20 April 1977)

**Assault and Battery § 8— self-defense — sufficiency of evidence**

In a prosecution for assault with a deadly weapon with intent to kill where defendant presented evidence that three men attacked him within the space of a few minutes, one broke his ribs, another held him while slamming a car door on his legs, and another shot at him with a .38 caliber revolver, defendant was privileged to defend himself, even by returning the gunfire, and the trial court should have so instructed even in the absence of defendant's request therefor.

APPEAL by defendant from *H. Martin, Judge.* Judgment entered 24 February 1976 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 6 April 1977.

State v. Taylor

*Attorney General Edmisten, by Associate Attorney Issac T. Avery III, for the State.*

*Swain, Leake & Stevenson, by Joel B. Stevenson and Robert S. Swain, for defendant appellant.*

ARNOLD, Judge.

Indicted for assault with a deadly weapon with intent to kill, defendant was found guilty of assault with a deadly weapon upon one Michael Worley. Error is assigned to the failure of the trial judge to charge on self-defense. We agree with defendant's contention that there was sufficient evidence to raise the issue, and the failure to instruct on self-defense was error.

Evidence tended to show that there was a fight at Larry's Tavern in rural Buncombe County between the defendant and his brother Lawrence Taylor, on one hand, and J. D. Wilson, the Peek brothers and Michael Worley, the bartender, on the other. Briefly stated, the evidence against the defendant tends to show that Lawrence Taylor started a fight with J. D. Wilson. Lawrence Taylor, who is smaller than Wilson, drew a .25 caliber automatic pistol, but Wilson disarmed Taylor, unloaded the gun, and then returned it to him. Defendant, hearing the commotion, entered the room. He was armed with a pocketknife, but Michael Worley, the bartender, kicked it out of his hand. The Taylors were ordered to leave the tavern and did leave in a car driven by Jimmy Wyatt. State's evidence further tended to show that defendant reloaded the .25 caliber pistol, placed the gun to Wyatt's head, and ordered him to return to the tavern. Defendant went to the tavern door, carrying the pistol in his hand. Wyatt shouted a warning to Michael Worley who armed himself with a .38 caliber revolver and met defendant at the door. Worley pointed the gun at defendant and forced him back to his car. J. D. Wilson and the Peek brothers followed Taylor and Worley to the car. When Taylor reached the car he sat down in the passenger seat and began firing at Worley. Worley returned the fire. J. D. Wilson tried to shut the car door on Taylor, but Taylor turned his gun on Wilson, and Wilson ran. Worley and Taylor again fired at each other, and one of Worley's bullets struck and killed Doyle Peek.

Defendant's evidence is very different. It tends to show that the Taylor brothers were originally ejected from the tavern by Worley, Wilson and the Peek brothers. Jimmy Wyatt, who

was driving for the Taylors after they left the tavern, decided that he wanted to return to Larry's Tavern in order to rejoin a poker game which was in progress there. Accordingly, he drove back to the tavern, even though the Taylors did not want to return. Upon reaching the tavern, defendant, who was unarmed, left the car and walked up to the side of the building where he relieved himself. As he returned to the car defendant was challenged by Michael Worley, who was armed. Worley demanded to know why defendant had returned, and defendant responded that he wished to buy more beer and to redeem poker chips which he had won earlier in the evening. Worley refused both requests, and as defendant returned to the car, Worley, Wilson and the Peeks followed him. Sidney Peek struck Taylor across the back with a pool cue and broke his ribs. J. D. Wilson manhandled Taylor into the car, and slammed the car door on his legs three times. Defendant cried out and swore at his assailants. Enraged by the curses, Worley shot at defendant and broke the glass out of the car window. Defendant said to his brother, "They are going to kill every damn one of us it looks like. Where is the gun at?" He retrieved it from beneath the car seat, loaded it, and fired several times toward the back of the car and into the air in an attempt to frighten Worley. Worley fired more shots, one of which killed Doyle Peek.

If defendant's evidence did raise the issue of self-defense, the court had a duty to instruct the jury on this issue even though defendant neglected to request the instructions. G.S. 1-180; *State v. Dooley,* 285 N.C. 158, 203 S.E. 2d 815 (1974); *State v. Riddle,* 228 N.C. 251, 45 S.E. 2d 366 (1947); *State v. Hickman,* 21 N.C. App. 421, 204 S.E. 2d 718 (1974). In North Carolina, the law of self-defense is as follows:

> "If one is without fault in provoking, or engaging in, or *continuing* a difficulty with another, he is privileged by the law of self-defense to use such force against the other as is actually or reasonably necessary under the circumstances to protect himself from bodily injury or offensive physical contact at the hands of the other, even though he is not thereby put in actual or apparent danger of death or great bodily harm." *State v. Anderson,* 230 N.C. 54, 56, 51 S.E. 2d 895 (1949) (emphasis added).

Defendant's evidence would permit a jury to find that he was not at fault in continuing the affray. Moreover, contrary to the State's argument, defendant's evidence does not show that he

was free to drive away in his car. If, as defendant says, three men attacked him within the space of a few minutes, and one broke his ribs, another held him while slamming a car door on his legs, and a third was shooting at him with a .38 caliber revolver, defendant was privileged to defend himself, even by returning the gunfire.

Defendant is entitled to a

New trial.

Judges BRITT and HEDRICK concur.